IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ADRIAN KERANS, M.D., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 3:04-CV-2269-P |
| PROVIDENT LIFE AND ACCIDENT | § | |
| INSURANCE CO., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court are (1) Plaintiff's motion to remand, filed November 17, 2004; (2) Plaintiff's objections to Defendant's response evidence, filed December 20, 2004; and (3) Plaintiff's motion for leave to file affidavit of Adrian Kerans, M.D., filed January 19, 2005. After careful consideration of the Parties' briefing and applicable law, the Court hereby DENIES Plaintiff's Motion to Remand; OVERRULES Plaintiff's objections to Defendant's response evidence, and GRANTS Plaintiff's motion for leave to file Kerans affidavit.

## FACTS

On May 10, 1990, Provident Life and Accident Insurance Co. ("Provident" or "Defendant) issued a disability insurance policy ("Policy") to Plaintiff Adrian Kerans, M.D. ("Plaintiff"). This Policy superseded three earlier individual disability policies. In December 1993, Plaintiff became disabled. He submitted a claim under the Policy in 1994.

On October 31, 1994, Provident filed a lawsuit against Plaintiff in federal court (3:94-CV-2322-T) ("the Original Action") alleging that Plaintiff engaged in fraud in connection with the Policy

1

and seeking rescission of the Policy. Plaintiff denied Provident's allegations and filed a counterclaim against Provident seeking to recover benefits under the Policy. The Parties entered into a Settlement Agreement ("Settlement Agreement") on February 8, 1996.

According to Plaintiff, Defendant has repeatedly attempted to alter the obligations owed by the Parties under the Settlement Agreement. Plaintiff alleges that Defendant has been committing errors in its claim processing and routinely requires Plaintiff to fill out forms that are not required under the Settlement Agreement.

Plaintiff filed this lawsuit for declaratory relief in state court on October 14, 2004. In it, he seeks a declaration that the only obligations he has under the Policy are those specifically set forth in the Settlement Agreement. Specifically, Plaintiff seeks a declaration that he is not obligated to provide any written information to Defendant under the Policy that is not identified in the Settlement Agreement. Plaintiff also asserts a breach of contract claim against Defendant for failing to comply with the terms of the Settlement Agreement.

Defendant removed this case to federal court on October 21, 2004 based on Defendant's contention that Plaintiff's disability benefits are provided by an insurance plan that is governed by ERISA. Now before the Court is Plaintiff's motion to remand.

## DISCUSSION

I.  **LEGAL BACKGROUND.**

   A.  **Preemption - Generally.**

Under our dual-sovereign system, the plaintiff is the master of his complaint and decides what law he will rely upon. *See The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913). The plaintiff has the prerogative to rely on state law although both federal and state law may provide

2

a cause of action. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987). Nevertheless, a defendant may remove an action from the state court in which it was filed to federal court, provided the defendant can show some basis for federal jurisdiction. *See* 28 U.S.C. §§ 1441(a), 1446(a). The removal statute itself does not create jurisdiction. Indeed, removal statutes are strictly construed and defendants have the burden of showing the federal court's jurisdiction. *See Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

In this case, Defendant claims federal question jurisdiction as the basis for removal. *See* 28 U.S.C. §§ 1131, 1446(a). Defendant must therefore make a "colorable" showing that a basis for federal jurisdiction exists. *See Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 4 (1st Cir. 1999).

Jurisdiction is normally ascertained from the face of the state court complaint that triggered removal. *See id*. Here, the state court complaint alleges only causes of action under state law. On its face, then, the complaint presents no federal question.

But there is an exception to this practice of focusing on the face of the complaint. Where a claim, though couched in the language of state law, implicates an area of federal law for which Congress intended a particularly powerful preemptive sweep, the cause is deemed federal no matter how pleaded. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). This exception to the well-pleaded complaint rule is called "complete preemption."

### B.     ERISA Preemption.

The Supreme Court has held that state law claims are completely preempted by ERISA and converted to federal questions if the plaintiff's state law claim(s) "relate to" an ERISA plan within the meaning of 29 U.S.C. § 1144(a) and fall within the scope of ERISA's civil enforcement provision. *See Metro. Life*, 481 U.S. at 64-65. ERISA applies to an "employee benefit plan" if that

plan is "established or maintained by any employer . . ." 29 U.S.C. § 1003(a). There are two types of "employee benefit plans": "employee welfare benefit plans and "employee pension benefit plans." 29 U.S.C. § 1002(3). This case concerns the first of these, an "employee welfare benefit plan."

ERISA defines an "employee welfare benefit plan" as

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . .

29 U.S.C. § 1002(1). If the insurance plan at issue in this case meets this definition, then the federal court has jurisdiction over this dispute and Plaintiff's only remedies are those provided by ERISA - in other words, his state law causes of action are preempted. *See Hansen v. Cont'l Ins. Co.*, 940 F.2d 971, 976 (5th Cir. 1991).

"Whether a particular set of insurance arrangements constitute an 'employee welfare benefit plan' is a question of fact." *Hansen*, 940 F.2d at 976. This factual determination is governed by a set of well established legal standards. First, the Department of Labor has promulgated regulations providing that certain insurance and other benefit plans are excluded from ERISA's coverage. *See id.* If Plaintiff's plan meets the criteria set forth in the Department of Labor regulations, then ERISA does not cover that plan and the inquiry is ended. *See id.* If, however, the plan at issue does not meet the criteria for exclusion from ERISA coverage in the Department of Labor regulations, "then the court must go on to determine whether the plan meets the criteria adopted in the Fifth Circuit that determine what plans *are* covered by ERISA." *Id.* (emphasis included).

**II.      EVIDENTIARY ISSUES.**

As an initial matter, the Court must resolve the Parties' dispute concerning the type of evidence that may be presented and considered in resolving this remand motion. Defendant argues that Plaintiff's factual recitation cannot be considered by the Court because it is not supported by any admissible summary-judgment type evidence. Plaintiff counters by arguing that the well-pleaded complaint rule requires the Court to look only to the four corners of the complaint when determining whether jurisdiction is appropriate.

Because it is not uncommon for a plaintiff to "inadvertently or intentionally fail[ ] to make clear that the claim for relief is essentially federal . . . federal courts usually do not limit their inquiry to the face of the plaintiff's complaint, but rather consider the facts disclosed on the record of the case as a whole in determining the propriety of removal." C. Wright & A. Miller, 14C Federal Practice and Procedure § 3734 (3d ed. 1998). In this case, in order to make a determination as to whether the insurance policies at issue qualify as an ERISA plan, the Court must look to the summary judgment-type evidence in the record.

In its attempt to provide the Court with summary judgment-type evidence, Plaintiff filed a motion for leave to file the affidavit of Adrian Kerans, which Defendant opposed. Plaintiff contends that his delay in submitting the affidavit was caused by (1) his belief that the four-corners rule governed this analysis and (2) Plaintiff being out of the country and without telephone access at the time the remand motion was being prepared. Because Plaintiff has shown cause for his delay in filing the affidavit, and because Defendant has not demonstrated any prejudice in conjunction therewith, the Court hereby GRANTS Plaintiff's motion.

Defendant objects to those portions of the Kerans affidavit that contain inadmissible legal conclusions and conclusory statements. After reviewing the Kerans affidavit, the Court agrees with Defendant and strikes those statements from the record. *See, e.g.,* Kerans Aff. ¶ 6 (stating that the Corporation did not "engage in any other activity relating to this policy and never intended to"; did not "intend to establish, maintain, or participate in a plan under ERISA"; did not "undertake any continuing administrative obligations relating to" the Policy; and "did not have an ongoing administrative scheme that related in any way" to the Policy.) The Court also finds that Plaintiff's conclusory statements and legal conclusions about the applicability of ERISA to his policy are inadmissible. Because Exhibits E, F, G and H of Plaintiff's motion to remand are not relied upon by the Court in rendering its decision, the Court does not address Defendant's objections concerning those documents.

Plaintiff also filed objections to certain of Defendant's evidence. Plaintiff objects to two unpublished orders submitted by Defendant as part of his briefing. Because the Court does not rely on those orders in making its decision, it need not address this objection. Plaintiff also objects to the worksheets and internal memoranda attached to the declarations as unauthenticated and as inadmissible hearsay, and to the Declarations of Skip Hall and Dawn DiBenedetto (Defendant's representatives) as self-serving and conclusory. After reviewing the Hall and DiBenedetto declarations and attached documentation, the Court concludes that Hall and DiBenedetto did properly authenticate the documents under Rule 901(b)(1) (as persons with knowledge), which are admissible hearsay under Rule 803(6). Moreover, Plaintiff has failed to identify any statement(s) that contain inadmissible conclusory statements or legal conclusions, and the Court does not find any. Plaintiff's argument that the declarations are self-serving fails as well, because Hall and

DiBenedetto, who are testifying as mere record custodians, are not parties to this action and there is no evidence that they have any stake in the outcome of this litigation.

### III.     FACTUAL BACKGROUND.

Dr. Kerans is the sole proprietor of a professional corporation known as Adrian Kerans, M.D., P.A. ("the Corporation") (Def.'s App. at 4.)  The Corporation employs Plaintiff's wife, Margaret Kerans, who is the office receptionist and Pat Lane, the office manager. (Def.'s App. at 59.)  Both Mrs. Kerans and Pat Lane share responsibility for procuring insurance for the Corporation's full-time employees. (Def.'s App. at 7-8.)

With respect to life and health insurance benefits, the Corporation provided all of its full-time employees with life and health insurance benefits under a plan provided by Employers Health Insurance through PHCS. (Def.'s App. at 8-10, 65, 84.)  The Corporation paid the employees' insurance premiums for that coverage. (Def.'s App. at 68.)

If an employee wanted to submit a claim under his health/life insurance policy, the employee could either obtain a claim form from the insurer himself or he could ask Pat Lane to obtain a claim form for him, which the employee would then fill out and submit himself. (Def.'s App. at 69, 89.) The Corporation did not handle the employees' filing of claims. (Def.'s App. at 69.)  While the Corporation did provide employees with the insurance applications, the employees themselves filled them out. (Pl.'s App. at 70.)  Pat Lane was responsible for receiving and paying the monthly insurance premium statements and ensuring that the Corporation was being billed properly. (Def.'s App. at 72, 91)

With respect to disability insurance benefits - the benefits at issue here - the only employees

7

with coverage (beginning in 1992) were Dr. and Mrs. Kerans and Pat Lane. (Def.'s App. at 72, 93, 100). The corporation paid the premiums for all three employees. (Def.'s App. at 73, 95.) Coverage was provided by Defendant Provident. (Def.'s App. at 73.) The Corporation received a discount on the premium amount from Provident when it added Mrs. Kerans and Pat Lane to Dr. Kerans' disability policy. (Def.'s App. at 93-94, 101.)

Both the health/life and disability insurance were procured by the same insurance agent. (Def.'s App. at 96.)

### III.   ANALYSIS.

#### A.   Department of Labor Regulations.

Plaintiff argues in a conclusory fashion - with no authority or analysis- that the plan falls within the safe-harbor provision established by the Department of Labor. (*See* Reply at 2.) The Department of Labor regulations provide that the term "employee welfare benefit plan" shall not include an insurance program under which (1) no contributions are made by an employer or employee organization; (2) participation in the program is completely voluntary for employees or members; (3) the sole functions of the employer with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; *and* 4) the employer receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs. *See* 29 C.F.R. 2510.3-1(j) (2005). Group insurance plans that meet each of these criteria are excluded from ERISA's coverage. *See Hansen*

8

*v. Cont'l Ins. Co.*, 940 F.2d 971, 976 (5th Cir. 1991).

There is no dispute here that the plan at issue does not meet the first of these criteria and therefore, the Department of Labor regulations do not exclude this plan from ERISA. *See id.* (failure to meet one of these elements causes a plan to fall outside the safe-harbor provision).

**B.	Fifth Circuit Test for Determining Existence of ERISA Plan.**

By its terms, ERISA applies only to those employee welfare benefit plans that are established or maintained by an employer for the purpose of providing certain benefits to its employees. *See* 29 U.S.C. § 1002(1). Thus, there are two elements to an ERISA plan: "first, it must be established or maintained by an employer, and second, the employer must have a certain intent - a purpose to provide benefits to its employees." *Hansen*, 940 F.2d at 977.

**1.	*Is there a plan?***

Before a court can ask whether a plan is an ERISA plan, it must first satisfy itself that there is in fact a "plan" at all. The Court "must determine from the surrounding circumstances whether a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Hansen*, 940 F.2d at 977.

The Corporation's insurance program meets these criteria: a reasonable person could conclude that the intended benefits were health, life, and disability benefits; the beneficiaries of the health and life insurance were all full-time employees and the beneficiaries of the disability insurance were Mr. Kerans, Mrs. Kerans, and Pat Lane; the premiums were paid by the employer; and the benefits would be received by having the individual employee submit his claims to the appropriate insurer.

9

### 2. *Is the plan established or maintained by an employer?*

The fact that a "plan" exists, however, does not necessarily mean that the plan is an ERISA plan. "[A]n employer or employee organization . . . and not individual employees . . . must establish or maintain the plan, fund, or program." *Hansen*, 940 F.2d at 977-78. To determine whether an employer established or maintained an employee benefit plan, the court should focus on the employer and its involvement with the administration of the plan. *See id.* at 978.

If an employer does no more than purchase insurance for his employees, and has no further involvement with the collection of premiums, administration of the policy, or submission of the claims, he has not established an ERISA plan. *See id.* at 978. ERISA does not regulate the bare purchase of insurance where the employer neither directly nor indirectly owns, controls, administers or assumes responsibility for the policy or its benefits. *See id.* The employer must have some "meaningful degree of participation . . . in the creation or administration of the plan." *Id.* "Moreover, while merely purchasing insurance is insufficient to establish an ERISA plan, 'the purchase of a group policy or multiple policies covering a class of employees offers substantial evidence that a plan . . . has been established.'" *Sipma v. Mass. Cas. Ins. Co.*, 256 F.3d 1006, 1012 (10th Cir. 2001); s*ee Provident Life and Accident Ins. Co. v. Sharpless*, 364 F.3d 634, 638 (5th Cir. 2004) (finding an ERISA plan with respect to a series of individual policies that were issued to physician shareholders).

In this case, the Corporation assumed sole responsibility for the selection and purchase of insurance for its employees. Pat Lane, as office manager, had the responsibility of selecting and purchasing the policies (with the help of Mrs. Kerans) and paying the premiums to the insurers on

a regular basis. Pat Lane also checked the monthly premium statements to ensure that the eligible and appropriate employees were covered under the policy. The Corporation did more than engage in the "bare purchase of insurance." The Corporation not only paid its employees' insurance premiums but also played an active role in the administration of the coverage, including choosing the insurance, adding and deleting employees from various policies, and obtaining and distributing insurance forms. The Corporation controlled the procurement and a meaningful portion of the administration of the benefits. *See, e.g., Kidder v. H&B Marine, Inc.*, 932 F.2d 347, 353 (5th Cir. 1991) (employer established and maintained a plan when it paid premiums on behalf of employees); *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 241 (5th Cir. 1990) (employer established and maintained a plan when it purchased insurance and paid a portion of premiums);

### 3. *Intent*.

The statute also requires that the employer have established or maintained the program with a purpose of providing certain benefits to its employees. *See* 29 U.S.C. 1002(1). Plaintiff contends that when he initially purchased the disability policy, he did not intend that the policy provide benefits for employees; the benefits were meant only for Dr. Kerans as the sole proprietor of the Company. (Mot. at 6.) Plaintiff relies on *Meredith v. Time Ins. Co.*, 980 F.2d 352, 357 (5th Cir. 1993) for the proposition that where an insurance plan is purchased by a sole proprietor covering only that proprietor and his spouse, same does not constitute an employee welfare benefit plan as defined by ERISA.

ERISA only covers employee welfare benefit plans that are established or maintained for the benefit of *employees*. *See Provident Life and Accident Ins. Co. v. Sharpless*, 364 F.3d 634, 638 (5th

Cir. 2004). The Secretary of Labor has issued a regulation explicitly withdrawing ERISA's application to situations in which the insurance plan at issue covers only the owner of a wholly-owned business and the owner's spouse. *See* 29 C.F.R. § 2510.3-3 (2005). The regulations also require that a plan involve at lease one employee. *See id.* Thus, if the only two people covered by the plan are the owner and the spouse, the plan does not provide coverage to any "employees" and the plan falls beyond the reach of ERISA. *See Cristantielli v. Kaiser Found. Health Plan of Tex.*, 113 F. Supp. 2d 1055, 1059-60 (N.D. Tex. 2000) (Solis, J.) In this case, while the Corporation did purchase an individual disability policy for Plaintiff and his spouse, it also purchased disability insurance for another employee, Pat Lane. Because the Corporation purchased insurance for an employee in addition to Plaintiff and his spouse, the plan became an ERISA plan. *See Williams v. Wright*, 927 F.2d 1540, 1545 (11th Cir. 1991) ("[A] plan covering only a single employee, where all other requirements are met, is covered by ERISA.")

Plaintiff also argues, without citing any legal authority, that ERISA does not apply because at the time the disability policy was established, Plaintiff was the sole insured. ERISA defines an "employee welfare benefit plan" as "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer . . ." 29 U.S.C. § 1002(1). This language does not require that the plan be governed by ERISA at its inception. ERISA applies to any plan heretofore established or maintained; in other words, established *or* maintained "up to this time" by an employer to provide benefits to the employees. *See Nix v. United Healthcare of Ala., Inc.*, 179 F. Supp. 2d 1363, 1369-70 (M.D. Ala. 2001) (discussing disjunctive nature of statute). In this case, the disability insurance at issue was initially established to provide coverage for Plaintiff only, and therefore was a non-ERISA plan at its inception. However, the Corporation subsequently added an

employee to the plan. Thus, the disability plan was maintained as an ERISA plan once the employee was added, which was before the time Plaintiff filed his claim.

Moreover, the disability policy at issue is arguably part of a larger comprehensive ERISA plan that included life and health insurance as well. *See Peterson v. Am. Life & Health Ins. Co.*, 48 F.3d 404, 407 (9th Cir. 1995). All three types of insurance were purchased from the same insurance agent and were maintained by the office manager. In addition, all types of insurance provided coverage for the owner and at least one employee.

The evidence is also sufficient to demonstrate that the Corporation established or maintained the program *with a purpose* of providing benefits. By agreeing to offer and pay the employees' insurance premiums, the Corporation signaled its intent to provide benefits for its employees. *See, e.g., Hansen*, 940 F.2d at 978 (accepting claim forms and submitting them to insurer signifies intent); *Memorial*, 932 F.2d at 241 (purchase and maintenance of insurance evidences intent).

In sum, the Court holds that the evidence demonstrates that the plan at issue was an employee benefit plan within the meaning of ERISA.[1]

**C. Waiver.**

Plaintiff argues that even if the evidence does demonstrate that the plan at issue was an ERISA plan, Defendant waived its right to argue that the policy is an ERISA plan by engaging in the following acts: (1) suing Plaintiff years ago and failing to contend that the policy was part of an ERISA plan for nearly a year; (2) electing to issue four individual disability policies to Plaintiff in

---

[1] Although this case involves the alleged breach of a settlement agreement, because the claims relate to an ERISA plan, they are consumed by the preemptive provision of ERISA. *See Boren v. N.L. Indus., Inc.*, 889 F.2d 1463, 1466 (5th Cir. 1989).

his name over a ten year period; (3) failing to contest Plaintiff's repeated assertions that the policy is not part of an ERISA plan until this proceeding; and (4) advising Plaintiff that Plaintiff was authorized to determine whether the policy was part of an ERISA plan. Plaintiff does not point to *any* evidence in the record to support his assertions.

Waiver is the intentional or voluntary relinquishment of a known right. *See* Black's Law Dictionary 1580 (6th ed. 1990). In the instant action, Defendant timely raised the issue of ERISA preemption at the outset of the case - both in its notice of removal and in its answer. Thus, Plaintiff's waiver argument is based on Defendant's undue delay in raising the ERISA defense in the Original Action.

In the Original Action, Provident did not seek leave to amend until the eve of trial (October 1995) - after the amendment deadline had expired. (Pl.'s App. Ex. A.) Provident argued that it did not learn of the requisite facts until it deposed Kerans' representatives, which occurred on the eve of trial due to Kerans' schedule and by the parties' agreement. (*Id.*) The court refused Provident's request for leave to amend because it found that Provident could have learned the requisite facts from documents in its own possession long before the deposition was taken. (*Id.*) However, the court did not consider whether Provident had waived its right to assert ERISA preemption. Moreover, the court's ruling indicates that Provident's delay in asserting ERISA preemption was not the result of intent, but rather of inexcusable neglect.

Moreover, in the Settlement Agreement that resolved the Parties' disputes in the Original Action, the Parties included a provision that expressly reserved Provident's rights with respect to the applicability of ERISA ("[N]either party is waiving its rights in connection with the continuing claim

or future claims that may be submitted by Kerans after the date of this Agreement, including, without limitation, Provident's contention that the Policy is part of an employee welfare benefit plan regulated by ERISA."). (Pl.'s App. Ex. B ¶ 8.)

In light of the foregoing, the Court concludes that the evidence does not establish that Defendant intentionally relinquished its right to assert ERISA preemption in this action.

## **CONCLUSION**

Accordingly, this action was properly removed to federal court, as ERISA grants federal court jurisdiction of actions brought to recover benefits or enforce rights under the terms of an ERISA plan. *See* 29 U.S.C. § 1132(e). Because the Court has concluded that federal question jurisdiction exists in this action, the Court declines to address the issue of diversity jurisdiction and hereby rejects Plaintiff's request for attorneys' fees.

It is SO ORDERED, this 31st day of May, 2005.

_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE